J. S12045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  ADOPTION OF:  O.D., A MINOR  :    IN THE SUPERIOR COURT OF
                                           :         PENNSYLVANIA
                                           :
APPEAL OF:  T.M.D., MOTHER       :      No. 1905 MDA 2017

Appeal from the Decree, October 31, 2017,
in the Court of Common Pleas of Berks County
Orphans' Court Division at No. 85603

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED MARCH 20, 2018**

T.M.D. ("Mother") appeals from the October 31, 2017 decree granting the petition of N.A.D ("Father") and A.D. ("Stepmother") (collectively, "Petitioners") to involuntarily terminate Mother's parental rights to minor female child, O.D. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b).  After careful review, we affirm.

Child was born in January 2008 to Mother and Father.  Mother and Father were subsequently married on August 6, 2010, but separated shortly thereafter, on December 3, 2010.  At the time of their separation, Mother and Father shared legal and physical custody of Child.  Mother and Father were ultimately divorced on May 3, 2012.  Petitioners, in turn, met in 2011 and have been married since October 17, 2014.  Petitioners and Child have resided together as a family unit since 2014.  (Notes of testimony, 10/31/17 at 7-8, 11, 35-36.)

On August 1, 2013, Father was granted sole physical and legal custody of Child. (*See* Emergency Custody Order, 8/1/13.) The trial court summarized the underlying facts and procedural history, as gleaned from the termination hearing, as follows:

> Custody [of Child] was split 50/50 [between Mother and Father], but that changed in May 2013.
>
> [Petitioners] attempted to pick up Child upon returning from a trip in May 2013, but they were unable to reach Mother. They found her and Child at a motel with a man. Mother appeared to Father to be under the influence of drugs or alcohol. During her interaction with Father, Mother had her eyes closed and leaned against a car just to be able to stand. Father took Child and called the police. Father also filed an emergency custody petition, which ultimately led to an Order of August 1, 2013 granting Father sole legal and physical custody of Child. This Order remains in effect.
>
> After entry of the custody order, Mother's only contact with Child consisted of sporadic telephone calls, which Father arranged. Around Christmas time in 2013, Mother left a scooter for Child. In 2014, Father saw Mother at a bank. He offered Mother an opportunity to call Child on Sundays and if done consistently perhaps contact could progress. Calls were not consistent, and, when they did occur, Child became reserved and quiet and often displayed uncertainty, doubt, and confusion. Father stopped allowing telephonic contact upon Child's request. Mother has not spoken to Child in 2 – 2½ years. Last year, Father took Child to counseling six times for emotional issues regarding Mother. Child requested that the counseling stop.
>
> In response to his counsel's questioning, Father testified that Mother has had no involvement with Child since January 2017 – no support has been paid, no cards have been sent, no telephone calls,

and no requests for a visit. In that time Father received three text messages from Mother – one in January to wish Child a happy birthday, one in February for Valentine's Day, and one around March to congratulate him on his buying a house. The February and March texts also asked Father to tell Child that she loves her.

At all times since the entry of the [August 1,] 2013 custody order, Mother has had Father's telephone number, and she has known where Father's parents reside. In 2013, Child told Mother which school she was attending. Father also takes Child to see various members of Mother's family monthly.

In addition to Child, Mother has two other children. She has a five-year-old son that she has been seeing the past few months for an hour or two on Wednesdays. The visits are supervised. Prior to these last few months, Mother had not seen this child since he was eight months old. Mother acknowledged that this child does not know her and reintegration into her life is necessary. She indicated that she could not do reintegration with both children at the same time and that she has been making life changes three months at a time. Mother also has an infant son with her current boyfriend.

Mother claimed she contacted a legal aid agency in 2014 regarding Child. At the time, her income was too great to qualify for aid. She went back six months later. The agency assisted Mother with getting some custody relief with regard to her son, but allegedly the agency was concerned about proceeding with an action regarding Child because Mother did not have a current address for Father. On October 16, 2017, only two weeks prior to the rescheduled hearing in this matter held on October 31, 2017 (the hearing was originally scheduled for September 27, 2017), Mother finally filed a petition to modify the 2013 custody order.

Trial court opinion, 12/5/17 at 3-5.

On July 21, 2017, Petitioners filed a petition to involuntarily terminate Mother's parental rights to Child, pursuant to Sections 2511(a)(1), (2), (5), and (b). Stepmother simultaneously filed a petition for adoption of Child, with the consent of Father. On September 26, 2017, the trial court appointed Melissa Krishock, Esq. ("Attorney Krishock"), as guardian **ad litem** ("GAL") for Child. A termination hearing was scheduled for September 27, 2017, but was subsequently continued. On October 30, 2017, Attorney Krishock filed a comprehensive, 13-page GAL report, recommending that it was in the best interest of Child to have Mother's parental rights terminated. On October 31, 2017, the trial court conducted a termination hearing; all the parties were present for said hearing and were represented by counsel. Following the hearing, the trial court entered a decree involuntarily terminating Mother's parental rights to Child, pursuant to Sections 2511(a)(1), (2), (5), and (b). On November 30, 2017, Mother filed a timely notice of appeal to this court. That same day, Mother filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On December 5, 2017, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Mother raises the following issues for our review:

> 1. Did the [trial] court err by terminating [Mother's] parental rights because [Petitioners] did not establish by clear and convincing evidence that [Mother's] parental rights should be terminated?

2.    Did the [trial] court err by terminating [Mother's] parental rights because the evidence presented by [Petitioners] was insufficient to support the [trial] court's decision?

3.    Did the [trial] court err by terminating [Mother's] parental rights because the [trial] court failed to continue the hearing until the custody action pending in another court could be heard?

4.    Did the [trial] court err by terminating [Mother's] parental rights because it denied [Mother's] request that [Child] be evaluated by a professional with regard to the bond between Mother and Child?

Mother's brief at 5-6 (capitalization omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted). "The trial court is free to believe all, part, or none of the

evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined "clear and convincing evidence" as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a

- 6 -

clear conviction, without hesitance, of the truth of the precise facts in issue."

***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (***en banc***) (citation and quotation marks omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions

which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014).

Instantly, we analyze the trial court's decision to terminate under Section 2511(a)(1) and (b). To meet the requirements of

Subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the **six months prior to the filing of the termination petition**, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (citation omitted; emphasis added). The trial court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Subsection 2511(b). *Id.* (citations omitted).

Upon review, we find that there was clear and convincing evidence to support the trial court's termination of Mother's parental rights to Child, pursuant to Section 2511(a)(1). The record establishes that Mother has demonstrated a settled purpose of relinquishing parental claim to Child and has performed virtually none of her parental duties for over four years. Specifically, the evidence established that Mother has had no physical contact with Child since August 1, 2013, when Father was awarded sole legal and physical custody of Child. (Notes of testimony, 10/31/17 at 15.) Father testified that Mother has not contacted him to inquire as to whether she could visit Child since January 2017. (*Id.* at 16-17.) Mother, in turn, acknowledged that she has not seen Child since 2013, but alleged this was because "she was going through a hard time," which included substance abuse issues, and placed blame on Father for failing to update his address or

answer the phone. (*Id.* at 38-39, 46, 49.) The record further reflects that Mother failed make any attempt to have her custody arrangements modified until two weeks before the rescheduled October 31, 2017 termination hearing, despite the fact she became aware of Father's new mailing address in March 2017. (*Id.* at 42, 48.)

Additionally, Mother acknowledged that she has Father's telephone number and was aware of the fact that Father frequently takes Child to visit Mother's family members, but has only spoken with Child on the telephone sporadically since August 2013. (*Id.* at 39, 47, 51.) Father testified that Mother has not made a single phone call to speak with Child since January 2017, but did send three text messages referencing Child in early 2017. (*Id.* at 15-16.) Mother, in turn, acknowledged that the last time she spoke to Child on the telephone was 2½ years ago. (*Id.* at 16, 39-40, 47.) Mother also testified that at one point she sent cards to Child at least once a month for "probably six months to a year," and that she had sent a card to Father's parents' house a few months ago. (*Id.* at 45.) Father, however, testified that Mother did not send any cards or gifts to Child in the six months preceding the filing of the termination petition. (*Id.* at 15).

Notably, Mother acknowledged at the termination hearing that she has not performed any of her parental duties with respect to Child for 6 months prior to the filing of Petitioner's termination petition, but avers that her struggles in 2013 have "made [her] a stronger person and . . . taught [her]

- 10 -

that [she] could survive anything." (**Id.** at 44, 49.) Mother contends that she is now ready to integrate into Child's life, starting with supervised visits 1 or 2 hours per week, so that she can "get to know the beautiful person [Child] is." (**Id.** at 43.) As the trial court noted, however, Mother's attempt "to obtain contact with Child is simply too little, too late." (Trial court opinion, 12/5/17 at 6.)

Based on the foregoing, we agree with the trial court that there exists clear and convincing evidence of record to establish that Mother's conduct "reveals a settled intent to relinquish [her] parental claim to [Child] or a refusal or failure to perform parental duties," sufficient to support the termination of her parental rights pursuant to Section 2511(a)(1). **See In re Z.S.W.**, 946 A.2d at 730.

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. . . . [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below,

> evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

In concluding that the termination of Mother's parental rights best served the needs and welfare of Child, the trial court emphasized that it was clearly in Child's best interest to move forward with her adoption by Petitioners, given that "[they] provide all of the Child's care." (Trial court opinion, 12/5/17 at 6.) The trial court properly reasoned as follows:

> Stepmother is Child's primary caregiver – she packs Child's lunch, takes her to school, communicates with teachers, arranges after-school care, takes Child shopping and to get their nails done, teaches Child about puberty, and administers discipline as necessary. Stepmother loves Child and described herself as Child's rock. Child has directly expressed a desire for Stepmother to adopt her.

> Stepmother has been involved in Child's life since Spring 2011. Father, Stepmother, and Child have acted as a family unit since 2014. Father and Stepmother were married on October 1[7], 2014. Eighteen months ago the family unit grew by one – Child got a baby brother.

*Id.* The record clearly supports these conclusions. (*See* notes of testimony, 10/31/17 at 9-10, 31-33.)

Additionally, Attorney Krishock, the GAL for Child, opined that the testimony she heard at the termination hearing did not change her recommendation that it was in the best interest of Child to have Mother's parental rights terminated:

No, Your Honor, what I heard today does not change any of the opinions in my [October 30, 2017] report. What I heard today that bolsters, I believe, my opinion that [Mother] at least knew of [F]ather's address she just testified in March of this past year. She did -- she did nothing at that time to attempt to change her custodial status in regard to [Child].

I also heard a lot of he didn't, I want, he didn't, I want. It was blame and all about her and as this Court is aware, and I told this to [Mother] when we met in my office, that sometimes being a parent means that you look at what's right for your child, not necessarily what you want or what you think is best or putting blame on somebody else.

So after meeting with the family I would not change my opinion. I think that termination would be appropriate and the adoption would be appropriate. As [Child] gets older if she believes that she would like to have contact with [Mother] and she becomes an adult that is obviously her choice. But right now I think it is in her best interest to have [Mother's] rights terminated and this adoption move forward.

Notes of testimony, 10/31/17 at 53-54.

We further agree with the trial court that Mother's request that Child be evaluated by a professional to analyze the bond between her and Mother is unwarranted, especially in light of the fact that "the lack of contact between Mother and Child has resulted in the dissolution of any bond that might have ever existed." (Trial court opinion, 12/5/17 at 6; **see also** Mother's brief at 21-22.) This court has continually recognized that "Section 2511(b) does not require a formal bonding evaluation." **In re Z.P.**, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citations omitted). "[I]n cases

where there is no evidence of a bond between a parent and child," as is the case here, "it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). In reaching this conclusion, we emphasize that "[a] child's life, happiness and vitality simply cannot be put on hold until the parent finds it convenient to perform parental duties." *In the Matter of the Adoption of A.M.B.*, 812 A.2d 659, 675 (Pa.Super. 2002). Our standard of review requires us to accept the trial court's findings of fact and credibility determinations where, as here, they are supported by the record. *See In re T.S.M.*, 71 A.3d at 267. Accordingly, we decline to reweigh the evidence and reassess witness credibility, as Mother repeatedly asserts that we should do.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child pursuant to Section 2511(a)(1) and (b). Accordingly, we affirm the October 31, 2017 decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2018

- 14 -